UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| H.R.M., INC. | : | |
| | : | |
| VS. | : | C.A. No. 2007-448S |
| | : | |
| S/V EMERALD CUT, her engines, tackle, apparel, furnishings, equipment, etc. and BONNIE BRIER, INC. | : : : | |

**PLAINTIFF'S PRE-TRIAL STATEMENT**

## I. Summary of Basic Facts

On or about the evening of August 13, 2007, Douglas Gould, an employee of Plaintiff, H.R.M., Inc. ("H.R.M." or "plaintiff") heard a report broadcasted on VHF Channel 12 concerning a sailing vessel that was dragging her anchor near the far northeast corner of the anchorage at Great Salt Pond, Block Island, Rhode Island. At the time of the report, plaintiff's salvage vessel was upon the waters of Block Island Sound. The weather was partly cloudy with winds SW at 14 knots. A line of severe thunderstorms was being tracked by plaintiff's rescue coordination center. The thunderstorms were heading toward Block Island with an estimated arrival within one hour. Mr. Gould proceeded to the location reported on the radio in order to investigate.

Upon arrival in Plaintiff's salvage vessel, Mr. Gould discovered a large cruising sailboat named S/V EMERALD CUT, dragging her anchor, thereby endangering herself, other anchored vessels, and potentially running aground on the shore of the "Recreation Area" causing pollution damage to the environment. A Block Island Harbormaster unit also arrived on the scene. It was determined that there was no one on board the S/V

EMERALD CUT, and that the vessel was either going to hit another vessel or end up aground on the shore or in the "Recreation Area", an environmentally sensitive protected area for shellfish. Anchoring within the borders of the Recreation Area is prohibited by federal law. The S/V EMERALD CUT was clearly in peril.

Mr. Gould boarded the S/V EMERALD CUT and attempted to energize the electric windlass, but there was no power. Finding the main cabin open, Gould went below deck, found the proper circuit breaker and turned on the windlass. Back on deck, Gould disconnected the snubber and used the windlass to retrieve the anchor and chain. During Gould's attempts to retrieve the anchor and chain, the vessel continued to drag, indicating that the anchor was fouled on some object preventing it from resetting. As the last few feet of chain came to the surface, Gould found a small outboard motor hanging from the S/V EMERALD CUT's CQR anchor. At this point, the S/V EMERALD CUT had dragged well north of the line of "no anchor" buoys and into the Recreation Area. The S/V EMERALD CUT was only a few feet from stranding on harbor bottom.

Upon information and belief, the value of the S/V EMERALD CUT, her engines, tackle, apparel, furnishings, equipment, etc., in the condition saved, amounted to at least Two Hundred Twenty Thousand and 00/100 ($220,000.00) Dollars, all of which was fully saved by reason of the salvage services rendered by plaintiff. The amount of just compensation claimed for the just and meritorious salvage services in connection with the S/V EMERALD CUT is Twenty Seven Thousand Five Hundred and 00/100 ($27,500.00) Dollars.

## II. Summary of Legal Arguments and Issues

In this civil action, H.R.M. contends that the services rendered by plaintiff to the S/V EMERALD CUT were salvage services of a high order of merit that were furnished voluntarily, professionally, promptly, efficiently, skillfully and under conditions that were difficult and dangerous and therefore, plaintiff is entitled to a liberal salvage award. H.R.M. submits that the legal framework as to a salvage award in this type of situation is rather straightforward.

The Supreme Court defines salvage as "an award against maritime property which was subject to a marine peril and benefitted by services voluntarily rendered by the claimant." *Cope v. Valette Dry-Dock Co.*, 119 U.S. 625 (1887). The elements necessary to prove a salvage claim are: 1) a maritime peril to the property to be rescued; 2) voluntary service not owed to the property as a matter of duty; and 3) success in saving the property or some portion of it from impending peril. *New York Protection Co. v. The Schooner Clara*, 90 U.S. 1 (1874). A maritime peril is defined as a vessel that is subject to potential danger or damage; the danger does not have to be immediate or absolute. *Fort Myers Shell & Dredging Co. v. Barge NBC 512*, 404 F.2d 137, 1969 AMC 186 (5th Cir. 1969). Salvage claims can either be "pure" or "for contract". Pure salvage claims, like the claim here, are those where services are rendered without prior agreement on compensation. Compensation for pure salvage is an award or reward secured by a maritime lien. *The Sabine*, 101 U.S. 384 (1879).

Generally, there is no precise formula for calculating salvage rewards, but are decided on a fact specific basis.

> Courts in admiralty usually consider the following circumstances as the main ingredients in determining the amount of the award to be decreed for salvage service: (1)

> The labor expended by the salvors rendering the salvage service. (2) The promptitude, skill and energy displayed in rendering the service and saving the property. (3) The value of the property employed by the salvors rendering the service, and the danger to which such property was exposed. (4) The risk incurred by the salvors in securing the property from the impending peril. (5) The value of the property saved. (6) The degree of danger from which the property was rescued.

*The Blackwall*, 77 U.S. 1 (1869). Over time, courts have considered two additional factors to the traditional six enumerated in *The Blackwell* to include "the degree to which the salvors have worked to protect the historical and archeological value of the wreck and items salved," as well as "the skill and efforts of the salvors in preventing or minimizing damage to the environment." *Columbus-America Discovery Group v. Atlantic Mutual Ins. Co.*, 974 F.2d 450, 1992 AMC 2705, 2728 (4th Cir. 1992) and *Trico Marine Operators, Inc. v. Dow Chemical Co.*, 1993 AMC 1042 (E.D. La. 1992). Based on the effort, skill, and risk incurred through such voluntary services, a policy has emerged to encourage the existence of professional salvors by giving generous or bonus awards. *H.R.M. Inc. v. Martina Mia II*, 1992 AMC 1347 (D. R.I. 1991).

In light of this legal framework, HRM asserts that the actions utilized were necessary to rescue and remove the S/V EMERALD CUT to the safety of a town emergency mooring, requiring a high degree of skill and performed at considerable risk to life, limb and salvage property. HRM's services were completed with great skill and effort and at great danger and risk to its personnel, equipment, valuable salvage vessel and environmentally protected Recreation Area. Plaintiff's employees quickly and professionally stabilized and removed the S/V EMERALD CUT to a place of safety. As

a result of plaintiff's action, the S/V EMERALD CUT was saved to the benefit of her owner and Plaintiff's salvage efforts were successful.

Respectfully submitted,

HRM, Inc.
By its Attorneys,

/s/ A. Lauriston Parks
A. Lauriston Parks, Esq. #0385
53 Narragansett Avenue
Jamestown, RI 02835
(401) 423-8900 – telephone
(401) 560-0186- fax
alp@alparks.net

/s/ Kelly N. Michels
James T. Murphy, Esq. #1698
Kelly N. Michels, Esq. #6478
Hanson Curran LLP
146 Westminster Street
Providence, Rhode Island 02903
(401) 421-2154 – telephone
(401) 521-7040 – fax
jtm@hansoncurran.com
knm@hansoncurran.com

**CERTIFICATION**

I hereby certify that on June 13, 2008, I electronically filed the within Statement using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Kelly N. Michels